**PORZIO, BROMBERG & NEWMAN, P.C.**
Gary M. Fellner, Esq.
Caitlin M. Nolan, Esq.
100 Southgate Parkway
Morristown, NJ  07962-1997
(973) 538-4006
gmfellner@pbnlaw.com
cmnolan@pbnlaw.com
Attorneys for Plaintiff, Alexander Caiola

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALEXANDER CAIOLA, | Civil Action No. 2:22-cv-5505 |
| Plaintiff, | |
| - against - | **COMPLAINT** |
| SPRINGFIELD PARK PLACE CONDOMINIUM ASSOCIATION, INC., | |
| Defendant. | |

Plaintiff Alexander Caiola ("Plaintiff" or "Mr. Caiola"), by his attorneys, Porzio, Bromberg & Newman, P.C., as and for his Complaint against Springfield Park Place Condominium Association, Inc. ("Association"), alleges as follows:

### INTRODUCTION

1. Mr. Caiola is a 56-year old man who has lived alone in his condominium in Springfield, NJ. His condominium unit is within the Association. He has lived there for over 20 years.

2. Mr. Caiola brings this action under the Fair Housing Act, 42 U.S.C. § 3601, *et seq.*, for monetary and injunctive relief, including enjoining the Association and its agents from violating his federally protected right to enjoy his home without discrimination, interference, or selective treatment due to his chronic mental disability.

3. During the past nine months, the Association has pursued an obvious campaign to

drive Mr. Caiola out of his home because of his mental illness by issuing an excessive number of violations and fines against him.  Over the course of only three months from January to April 2022, the Association issued 16 violations against him, each accompanied by a $25 fine and 30-day suspension of membership rights, amounting to fines totaling $400 and a 480-day suspension of membership rights.  The violations are trivial and without merit.

4.  Upon information and belief, the Association has also denied Mr. Caiola swimming pool privileges in the past due to his mental disability.

5.  Since 2020, Plaintiff has been enrolled in a program that helps the disabled and has put him on a course of marked improvement.  He is currently fully compliant with his prescribed medication.  Mr. Caiola has never hurt anyone in all the years he has lived in the Association.

6.  Upon information and belief, the Association has recently made the decision to drive Mr. Caiola permanently out of his home and from the Association because of his mental impairment.  No showing of sympathy or tolerance has been made despite the fact that Mr. Caiola poses no threat of harm.

7.  Unless enjoined from issuing more violations and engaging in other wrongful conduct, the Association and its agents will continue on their campaign prohibited under federal law.

**JURISDICTION AND VENUE**

8.  This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, in that this is a civil action arising under Fair Housing Act, 42 U.S.C. § 3601, *et seq*.

9.  Venue is proper in this district under 28 U.S.C. § 1391(b)(1) in that Defendant resides in this district and in New Jersey.  Venue is also proper under 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to the claim occurred in this district.

Venue is also proper under 28 U.S.C. § 1391(b)(3) in that the Association is subject to personal jurisdiction in this district and there is no other district in which the action may otherwise be brought.

## STATEMENT OF FACTS

**The Parties**

10. Mr. Caiola is the sole resident of 1505 Park Place, Springfield, NJ 07801. The Alex Caiola Perpetual Trust, which has an address i/c/o Porzio, Bromberg & Newman P.C., 100 Southgate Parkway, Morristown, NJ 07962-1997, is the fee owner of the unit. 1505 Park Place, Springfield, NJ 07801 is a unit in the Association. Mr. Caiola has peaceably lived within the unit since April 2002. He has lived alone since.

11. Mr. Caiola was admitted to the New Jersey bar in 1996 and the District of Columbia bar in 2006 as an attorney-at-law. He formerly maintained an office for the practice of law in Plainfield. However, later in life, he developed debilitating mental illness.

12. Mr. Caiola has suffered for several years from anxiety and panic disorders. Because of it, he is unable to be employed. He receives counseling and treatment daily for his handicap Monday to Friday at the Mount Carmel Guild Behavioral Health Center, part of the Catholic Charities of the Archdiocese of Newark. His medication compliance is overseen by mental health professionals, as well as his full-time caretaker.

13. In addition to the daily group sessions, Mr. Caiola meets with a staff psychiatrist and an Advanced Practice Nurse monthly for medication management, education and counseling. Mr. Caiola also has a personal caretaker, who oversees his medication compliance and provides supervision in the community.

14. The Springfield Park Place Condominium Association, Inc. is a non-profit

condominium association consisting of 312 townhomes located at and around Park Place in Springfield Township, New Jersey 07081. Its president is Mark Stanziale.

**The Association's Unlawful Campaign Against Mr. Caiola**

15.     Mr. Caiola is neither violent nor aggressive. He never hurt anyone in the community. He acknowledges there have been incidents where he has been loud when he became anxious, but he poses no harm, and is calm when medication compliant. In the more than two years that he has participated in the program at Mount Carmel, a program for individuals diagnosed with severe and persistent mental illness, he has not exhibited violent or aggressive behavior.

16.     Similarly, in the more than 20 years that Mr. Caiola has lived at 1505 Park Place, he has never harmed any person.

17.     During the past nine months, the Association has sought to drive Mr. Caiola out of the Association due to his handicap. This has been motivated by fear, misunderstanding, and/or spite.

18.     This is glaringly illustrated by the Association having issued an excessive number of violations and fines against him. Over the course of only three months, from January to April 2022, the Association issued 16 violations against Mr. Caiola, each accompanied by a $25 fine and 30-day suspension of membership rights, amounting to fines totaling $400 and a 480-day suspension of membership rights.

19.     For example, he was fined on April 8, 2022 for leaving "trash in uncovered cans in front of his Unit in the morning." Upon information and belief, trash left in an uncovered bin does not trigger violations or fines against others. The Association has also issued violations and fines against Mr. Caiola during the above-stated three-month period for: (1) "stand[ing] on his back

deck and wander[ing] around the site while screaming"; (2) "pac[ing] around in the streets (as opposed to sidewalks) kicking objects"; (3) "wander[ing] the site while screaming"; (4) "leav[ing] trash bags on the sidewalk in front of another unit"; and (5) "leav[ing] a mattress in the front driveway of [his] Unit."  The violations were issued in a short-time span.

20. The Association also filed a civil action in New Jersey Superior Court in February 2022.  It did not seek to resolve its allegations through Alternative Dispute Resolution as mandated by the New Jersey Condominium Act, N.J.S.A. § 46:8B-14(k), which states that an "association shall provide a fair and efficient procedure for the resolution of housing-related disputes between individual unit owners and the association."  Instead, the Association alleged in its complaint, among other things, that Mr. Caiola "generally act[s] in an alarming and irrational manner" and "the Association, via its staff and the volunteers on the Board of Trustees, has received many other reports of similar misconduct by Mr. Caiola, which have become increasingly frequent over the past months."  The Association also alleged that "police have consistently refused to take any other action than to escort Mr. Caiola back to his Unit."

21. The Association sought a preliminary injunction and specific performance of the Association's governing documents, alleging that Mr. Caiola was not following its rules and policies.

22. By order dated March 17, 2022, the Chancery Court (Hon. Robert J. Mega, P.J. Ch.) denied the Association's motion for a preliminary injunction in all respects.  By separate order entered the same date, the Chancery Court dismissed the Association's action in its entirety and referred the matter to ADR as mandated by New Jersey law.  Thus, there is no action now pending in Superior Court.

23. Despite the referral to ADR, threats of fines against Mr. Caiola continued.  By email

dated August 8, 2022, the Association's counsel, David Merritt, Esq., notified Mr. Caiola's lawyer at Porzio, Bromberg & Newman, PC that he "understands Alex scattered some trash around the [stoop] on Saturday and a neighbor reported it – see attached with photo for reference."  Mr. Merritt further stated he "believes a different neighbor cleaned it up after it sat there for a few hours.  I'm waiting to confirm the facts but the Board will likely treat this as a violation with $25 fine in the ordinary course."  Such threat was made even though, on information and belief, there is no evidence that Mr. Caiola was responsible for leaving the trash on the ground.

24. Members of the Association have access to a communal swimming pool.  The management of the pool is overseen by the Association.  Though Mr. Caiola has used the pool before, he was denied access to it due to his failure to show I.D. when he sought access.  Such action wreaks of unfairly singling him out (and denying him benefits and privileges available to all residents) given the length of time he has lived in the community and is a known resident-owner.

25. Piling on further, the Association's president, Mark Stanziale, filed a criminal charge of harassment against Mr. Caiola on January 30, 2022 with the local police due to Mr. Caiola having opened Mr. Stanziale's screen door and saying something, before quickly retreating to the street. Mr. Caiola did not engage in criminal "harassment" as alleged, and Mr. Stanziale knew or should have known as much.  Upon information and belief, the criminal complaint was filed in bad faith, with malice, and designed to force Mr. Caiola to move away and leave the community.

26. Mr. Stanziale's criminal charge against Mr. Caiola remains pending.  No hearing has been scheduled as of this date.

27. Upon information and belief, such "criminal" charge was filed as part of the

Association's ongoing efforts to ostracize Mr. Caiola within, and expel him from, the community that he has called home for over 20 years.

28. Upon information and belief, the Association has communicated to others that Mr. Caiola is unwelcome, should be avoided, and/or is to be feared.  This is illustrated, among other things, by unprovoked stares at Mr. Caiola from neighbors when he is simply driven to his home and exits the vehicle.

29. Mr. Caiola is not a direct threat to the persons or property of others.  Despite this, the Association, upon information and belief, wants to rid Mr. Caiola from the Association completely because of his chronic and severe handicap.

30. Mr. Caiola believes, and has stated to others, that the behavior of the Association and its agents is "cruel and sadistic."  He feels that he is being targeted within his own home environs due to his most unfortunate disability.

31. Upon information and belief, other members of the Association have not been targeted by the Association in a manner that remotely replicates the Defendant's selective behavior and animus aimed at Mr. Caiola.

## COUNT 1
### (Violation of the Fair Housing Act, 42 U.S.C. § 3617)

32. Plaintiff Alexander Caiola repeats and realleges each and every allegation stated above as if set forth herein at length.

33. Mr. Caiola is a member of a protected class.  He has a mental impairment that is a handicap protected under federal law.

34. Mr. Caiola has engaged in the exercise and enjoyment of his Fair Housing rights.

35. The Association, acting with discriminatory intent, through its officers and agents, has engaged in acts with the objective of driving Mr. Caiola out of the Association, motivated in

whole or in part by his mental handicap.

36. The Association has coerced, threatened, intimidated, and/or interfered with Mr. Caiola's Fair Housing rights protected under federal law.

37. As a result of the Association and its agents actions, Mr. Caiola seeks to enjoin the Association from interfering with the exercise and enjoyment of his Fair Housing rights.

38. By reason of the foregoing, the Association is also liable for monetary damages, as well as attorney's fees, in the amount to be determined at trial, as authorized by federal law.

**WHEREFORE**, Plaintiff requests judgment against the Association as follows:

A. preliminarily and/or permanently enjoining Defendant, its officers and agents from taking any actions that aim or attempt to deny Plaintiff his Fair Housing rights under federal law;

B. awarding Plaintiff compensatory damages, plus attorney's fees, in an amount to be determined at trial as authorized by law;

C. granting Plaintiff such other and further relief as the Court deems just and proper.

**PORZIO, BROMBERG & NEWMAN, P.C.**
Attorneys for Plaintiff Alexander Caiola

By   s/Gary M. Fellner
      Gary M. Fellner, Esq.
      An Attorney of the Firm

Dated: September 12, 2022